IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

THEODORE F.,                        *
                    Plaintiff,.     *
            vs.                     *            Civil Action No.   ADC-22-1658
KILOLO KIJAKAZI,                    *
Acting Commissioner,                *
Social Security Administration,     *
                    Defendant.      *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM OPINION

On July 6, 2022, Theodore F. ("Plaintiff" or "Claimant") petitioned this Court to review

the Social Security Administration's ("SSA") final decision denying his claims for Disability

Insurance Benefits ("DIB") under Title II. ECF No. 1. Plaintiff and Defendant filed cross-motions

for summary judgment (ECF Nos. 11, 13) on December 13, 2022 and February 13, 2023

respectively.[1] After considering the parties' motions, the Court finds that no hearing is necessary.

Loc.R. 105.6 (D.Md. 2021). For the reasons that follow, Plaintiff's Motion for Summary Judgment

(ECF No. 11) is GRANTED as to remand and DENIED as to all other relief. Defendant's Motion

for Summary Judgment (ECF No. 13) is DENIED, and the SSA's decision is REMANDED for

further analysis in accordance with this opinion.

## PROCEDURAL HISTORY

On August 30, 2018, Plaintiff filed a Title II application for DIB alleging disability since

March 15, 2015. ECF No. 8-3 at 17.[2] Plaintiff subsequently amended his alleged onset date to

August 21, 2016. *Id.* at 17, 53. His claim was initially denied on May 29, 2019, and upon

---

[1] On July 7, 2022, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United
States District Court for the District of Maryland, both parties consented to proceed before a United
States Magistrate Judge. ECF No. 5. On February 28, 2023, this case was transferred to Judge A.
David Copperthite for all proceedings. ECF No. 5.
[2] Although ECF No. 8 is independently paginated, this Opinion cites to the page numbers assigned
by CM/ECF.

reconsideration on December 13, 2019. *Id.* Thereafter, Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held virtually on September 20, 2021. *Id.* On September 28, 2021, the ALJ rendered a decision finding that Plaintiff was not disabled under the Act. *Id.* at 39. Plaintiff then requested review of the ALJ's decision, which the Appeals Council denied on May 18, 2022. *Id.* at 8. Thus, the ALJ's decision became the final decision of the SSA. *See* 20 C.F.R. §§ 404.981, 416.1481; *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000). On July 6, 2022, Plaintiff filed a Complaint in this Court seeking judicial review of the SSA's denial of his disability application. ECF No. 1.

## STANDARD OF REVIEW

This Court may review the SSA's denial of benefits under 42 U.S.C. § 405(g). *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (citation omitted). The Court's review of an SSA decision is deferential: "[t]he findings of the [SSA] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). *See Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996) ("The duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court."). The issue before the reviewing Court is whether the ALJ's finding of nondisability is supported by substantial evidence and based upon current legal standards. *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (citations omitted). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In a substantial evidence review, the Court does not "reweigh conflicting evidence, make

2

credibility determinations, or substitute [its] judgment for that of the [ALJ]. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted). Therefore, in conducting the "substantial evidence" inquiry, the Court must determine whether the ALJ has considered all relevant evidence and sufficiently explained the weight accorded to that evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY DETERMINATIONS AND BURDEN OF PROOF

To be eligible for DIB, a claimant must establish that she is under disability within the meaning of the Act. The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant shall be determined to be under disability where "[her] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

In determining whether a claimant has a disability within the meaning of the Act, the ALJ, acting on behalf of the SSA, follows a five-step sequential evaluation process outlined in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520, 416.920. *See Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). "If at any step a finding of disability or nondisability can be made, the SSA

will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ considers the claimant's work activity to determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. At step two, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment [or combination of impairments]" that is either expected to result in death or to last for a continuous twelve months. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509, 416.920(a)(4)(ii), 416.909. If not, the claimant is not disabled. At step three, the ALJ considers whether the claimant's impairments, either individually or in combination, meet or medically equal one of the presumptively disabling impairments listed in the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If so, the claimant is considered disabled, regardless of her age, education, and work experience. *See Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

Prior to advancing to step four of the sequential evaluation, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is then used at the fourth and fifth steps of the analysis. 20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv). Claimant's RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ must consider even those impairments that are not "severe." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In determining RFC, the ALJ evaluates the claimant's subjective symptoms (e.g., allegations of pain) using a two-part test. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a). First, the ALJ must determine whether objective evidence

4

shows the existence of a medical impairment that could reasonably be expected to produce the actual alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b). Once the claimant makes that threshold showing, the ALJ must then evaluate the extent to which the symptoms limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). At this second step, the ALJ must consider all of the available evidence, including medical history, objective medical evidence, and statements by the claimant. 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must assess the credibility of the claimant's statements, as symptoms can sometimes manifest at a greater level of severity of impairment than is shown by solely objective medical evidence. *See generally* SSR 96-7p, 1996 WL 374186 (July 2, 1996). To assess credibility, the ALJ should consider factors such as the claimant's daily activities, treatments she has received for her symptoms, medications, and any other factors contributing to functional limitations. *Id.* at *3. However, the ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (citations omitted)). Requiring objective medical evidence to support the claimant's subjective evidence of pain "improperly increase[s] [her] burden of proof." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017).

At step four, the ALJ considers whether the claimant has the ability to perform past relevant work based on the determined RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If so, the claimant is not disabled. Where the claimant is unable to resume past relevant work, the ALJ proceeds to the fifth and final step of the sequential analysis. Claimant has the burden of proof during steps one through four of the evaluation. 20 C.F.R. §§ 404.1520, 416.920. *See Radford*, 734 F.3d at 291. However, at step five, the burden of proof shifts to the ALJ to prove: (1) that there is

5

other work that the claimant can do, given her age, education, work experience, and RFC, and (2) that such alternative work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). *See Hancock*, 667 F.3d at 472–73. If the claimant can perform other work that exists in significant numbers in the national economy, she is not disabled. If the claimant cannot perform other work, she is disabled.

## THE ALJ'S DETERMINATION

The ALJ performed the sequential analysis and found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of August 21, 2016. ECF No. 8-3 at 19. At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

> degenerative disc disease and degenerative joint disease of the lumbar spine, and status post surgery with post-laminectomy syndrome; tears of the right shoulder with tendinopathy, degenerative joint disease of the shoulder, and status post surgery including rotator cuff transplant; recurrent abdominal hernia, and status post umbilical hernia repair and cholecystectomy; degenerative disc disease and degenerative joint disease of the cervical spine and status post surgery; mild osteoarthritis of the right hip; anxiety; and depression/major depressive disorder.

*Id.* at 20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medical equaled one of the listed impairments in 20 C.F.R. pt. 404, Subpt. P, App. 1. *Id.* at 22-27. The ALJ then determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he is limited to occupations that require no more than occasional postural maneuvers, such as stooping, kneeling, crouching, and climbing on ramps and stairs, but he must avoid occupations that require crawling or climbing on ladders, ropes, and scaffolds. The claimant is limited to occupations that require no more than frequent balancing. He must avoid occupations that require overhead reaching or pushing and pulling with the upper extremities, to include the operation of hand levers or overhead work. The claimant must avoid concentrated prolonged exposure to cold temperature extremes, vibration, extreme dampness and humidity, as well as exposure to hazards, such as dangerous machinery and unprotected heights. The claimant is limited to simple routine repetitive work, generally described as unskilled, with no more than a specific vocational preparation (SVP) of two, and that is low stress, defined as only occasional decision-making required and only occasional changes in the work setting. He is limited to occupations that require no more than

occasional interaction with supervisors, coworkers, and members of the general
public.

*Id.* at 27-37. At step four, the ALJ found that Plaintiff is unable to perform past relevant work as a

licensed practical nurse or general duty nurse. *Id.* at 37. Finally, at step five, the ALJ concluded

that there are "jobs that exist in significant numbers in the national economy that the claimant

could have performed" considering his age, education, work experience, and RFC. *Id.* at 37-39.

Thus, the ALJ concluded that Plaintiff was not disabled under the Act. *Id.* at 39.

### DISCUSSION

On appeal, Plaintiff argues that this Court should reverse, or in the alternative remand, the

SSA's final decision because the ALJ: (1) erroneously evaluated his subjective complaints and (2)

erroneously assessed his residual functional capacity. ECF No. 11 at 4, 11. For the reasons

explained herein, the Court finds that the ALJ properly considered Plaintiff's subjective complaints

but that remand is necessary because her RFC determination is not supported by substantial

evidence.

A. The ALJ Properly Evaluated Plaintiff's Opinion Evidence

Plaintiff first argues that the ALJ improperly discredited his subjective complaints and

improperly "relied upon [his] daily activities." ECF No. 11 at 4-11. Conversely, Defendant argues

that substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints. ECF

No. 13-1 at 6. An ALJ properly analyzes subjective complaints by using the two-part test set forth

in 20 C.F.R. §§ 404.1529 and 416.929:

> Under the regulations implementing the Social Security Act, an ALJ follows a two-
> step analysis when considering a claimant's subjective statements about
> impairments and symptoms. First, the ALJ looks for objective medical evidence
> showing a condition that could reasonably produce the alleged symptoms. Second,
> the ALJ must evaluate the intensity, persistence, and limiting effects of the
> claimant's symptoms to determine the extent to which they limit the claimant's
> ability to perform basic work activities. The second determination requires the ALJ

7

to assess the credibility of the claimant's statements about symptoms and their functional effects.

*Lewis*, 858 F.3d at 865–66 (citations omitted); *see also* Social Security Ruling 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016); *Craig*, 76 F.3d at 594 (describing the two-step process).

At the second step of this two-step inquiry, an ALJ must assess the claimant's statements about "the intensity, persistence, and limiting effects of symptoms . . . in relation to the objective medical evidence and other evidence." *Diane J. v. Kijakazi*, No. MJM-21-1193, 2022 WL 4551879, at *3 (D.Md. Sept. 29, 2022). At this stage, an ALJ may not disregard a claimant's subjective statements "*solely* because the objective medical evidence does not substantiate' them." *Arakas*, 983 F.3d at 95 (emphasis added) (quoting SSR 6-3p, 2016 WL 1119029, at *5); *see also Shelly C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 360 (4th Cir. 2023) (an ALJ may not dismiss "subjective complaints based *entirely* upon the belief that they were not corroborated by the record's medical evidence"). This is because "pain is not susceptible of objective proof[.]" *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). However, "while 'a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence . . . . they need not be accepted to the extend they are *inconsistent* with the available evidence, including objective evidence of the underlying impairment[.]'" *Lavinia R. v. Saul*, No. SAG-20-1083, 2021 WL 2661509, at *4 (D.Md. June 29, 2021) (emphasis added) (quoting *Craig*, 76 F.3d at 595).

In *Arakas v. Commissioner, Social Security Administration*, the United States Court of Appeals for the Fourth Circuit reversed an ALJ's decision because he "effectively requir[ed]" that the plaintiff provide objective medical evidence to support her subjective complaints. 983 F.3d at 96. While the ALJ did consider other evidence in the record, "his opinion indicate[d] that the lack of objective medical evidence was his chief, if not definitive, reason for discounting" the plaintiff's

8

complaints. *Id.* at 97. This error was "particularly pronounced" as the claim involved fibromyalgia—a disease "that does not produce" objective medical evidence, and thus "normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects . . . of the disease." *Id.* Given the nature of the disease, the Fourth Circuit concluded that ALJs "may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or *some other disease that does not produce such evidence.*" *Id.* (emphasis added); *see also Shelly C.*, 61 F.4th at 361 (finding depression to be one of those other diseases). As to diseases that *do* produce such objective evidence, the Court held that ALJs are still prohibited from disregarding a claimant's subjective complaints "*solely*" because they are not substantiated by objective medical evidence. *Id.* at 95 (emphasis added).

In *Lavinia R. v. Saul*, a case involving, among other things, "degenerative disc disease of the cervical spine and bilateral carpal tunnel syndrome," this Court upheld an ALJ's finding that a "claimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." No. SAG-20-1083, 2021 WL 2661509, at *1, 4 (D.Md. June 29, 2021). To reach this conclusion, the ALJ discussed "the available radiographic and electrodiagnostic evidence," her treatment history, and provider recommendations and non-recommendations for treatment. *Id.* The Court found that the ALJ's reliance on conflicts in the medical and treatment evidence, as opposed to an absence of objective medical evidence, provided substantial evidence to disregard the plaintiff's objective statements. *Id. See also Diane J. v. Kijakazi*, No. MJM-21-1193, 2022 WL 4551879 (D.Md. Sept. 29, 2022) (finding that the ALJ properly disregarded the claimant's statements based on "both objective medical evidence and other evidence in the record, such as

observations during . . . medical appointments and her treatment history").

Here, Plaintiff testified that he was largely immobilized due to his impairments. ECF No. 8-3 at 28 ("He said that [he] is in constant pain all day long and is not capable of doing anything."). In her decision, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" but reasoned that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 29. Unlike in *Arakas*, Plaintiff here has provided no argument, medical source, or citation to the record indicating that his medically determinable impairments are of the variety that do not produce objective medical evidence. 983 F.3d at 97-98. Accordingly, the Court's inquiry in this case is limited to whether the ALJ discredited Plaintiff's subjective complaints based *solely* on a lack of objective medical evidence. I find that she did not. To the contrary, in making her determination the ALJ considered, in great detail, Plaintiff's symptoms, treatment history, medical records, and observations made by his providers. ECF No. 8-3 at 29-33.

As to Plaintiff's spinal impairments, the ALJ noted, among other things, that "records indicate that [his] function was fairly good and he continued to treat [] impairments with prescribed medications, without further surgical intervention." *Id.* at 29. Plaintiff's "gait was normal, his sensation was normal to light touch, [] his strength was 5/5 in his bilateral extremities", and "his muscle tone was intact." *Id.* at 29, 31. He also "exhibited a reciprocal gait with no evidence of limp/antalgia and he used no assistive device." *Id.* at 29-30. MRI imaging revealed "mild disc bulging . . . without advanced foraminal stenosis throughout the lumbar spine." *Id.* And, pain management records reveal that Plaintiff "was able to perform basic activities of daily living with his pain medications." *Id.* at 30.

As to Plaintiff's shoulder impairments, the ALJ explained that Plaintiff's strength was noted as "5/5 in his bilateral upper extremities." *Id.* X-ray imaging "revealed minimal degenerative changes of the acromioclavicular joint." *Id.* Plaintiff reliably treated his shoulder pain with "prescribed medications" and "without additional treatment protocol." *Id.* at 31. Similarly, Plaintiff did not need "any invasive treatment" to treat his "right hip osteoarthritis." *Id.* at 32. And, Plaintiff's mental impairments were treated "conservatively with prescribed medications and counseling, and he required no inpatient treatment nor hospitalizations." *Id.* at 32. During his assessments he was "alert and oriented, his judgment and insight were normal, and his cognition was intact." *Id.* at 32. Plaintiff's mental progress was "generally stable and he was advised to continue with his prescribed treatment protocol." *Id.* at 33.

In sum, unlike in *Arakas*, here, the ALJ discredited Plaintiff's subjective complaints based on their *inconsistencies* with the record as a whole. *See* 983 F.3d at 97. In particular, the ALJ determined that the medical opinions of various providers, imaging, test results, and treatment history did not support Plaintiff's allegation that he was "not capable of doing anything." ECF No. 8-3 at 28. Accordingly, the Court finds that the ALJ's decision to disregard Plaintiff's subjective complaints is supported by substantial evidence.

In stark comparison to the detailed discussion of Plaintiff's medical and treatment history, the ALJ's discussion of Plaintiff's daily activities is brief (one paragraph). ECF No. 8-3 at 33. The ALJ explained that "the evidence of record reflects that the claimant reported activities such as caring for his son and taking him to school, performing personal care, cooking, cleaning, doing laundry, shopping in stores and by computer, driving, handling money and paying bills online, reading, playing cards and listening to music with his son, attending doctor's appointments, and engaging in activities with his son." *Id.* While acknowledging that Plaintiff "has some limitations

performing these activities," the ALJ concluded that "taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis." *Id.* While I agree with Plaintiff that ALJs must consider "the nature and extent of a claimant's activities of daily living when using those activities to discount a claimant's subjective complaints," I find any error here harmless. *See Lavinia*, 2021 WL 2661509, at *4. It is clear, based on her decision, that the ALJ did not rely exclusively, or even primarily, on the activities of daily living in making her findings. As explained above, her detailed discussion and analysis of Plaintiff's treatment records and medical history amply supports her conclusions. *See Diane J. v. Kijakazi*, 2022 WL 4551879, at *4 (finding that "the alleged failure of the ALJ to explain how Plaintiff's daily activities supported the conclusion that she could not sustain an eight-hour workday is at best a harmless error"). Accordingly, I find Plaintiff's argument unavailing.

B. The RFC Analysis

Plaintiff next argues that the ALJ erroneously assessed his residual function capacity. ECF No. 11 at 11-26. The Court will first address Plaintiff's arguments that the ALJ: (1) did not properly perform the requisite function-by-function analysis and (2) did not explain how Plaintiff could perform work-related activities for eight hours per day, five days a week. *Id.* at 11-15; 20-22. Social Security Ruling ("SSR") 96-8p provides the proper framework for evaluating Plaintiff's RFC. Specifically, the Ruling states:

> The RFC assessment must include **a narrative discussion describing how the evidence supports each conclusion**, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, **the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.**

> The adjudicator must also explain how any material inconsistencies or ambiguities
> in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7 (footnote omitted) (emphasis added). The ALJ must "build an accurate and logical bridge" between the record evidence and an RFC finding. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). While there is no per se rule that remand is required when an ALJ fails to perform "an explicit function-by-function analysis," remand is nonetheless appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636 (citations omitted). *See Schlossnagle v. Colvin*, No. TMD 15-935, 2016 WL 4077672, at *7 (D.Md. Aug. 1, 2016) (explaining the same). "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (citations omitted).

In *Mascio v. Colvin*, the United States Court of Appeals for the Fourth Circuit remanded a decision of the SSA because the ALJ's RFC assessment "said nothing" about the claimant's ability to perform certain functions for a full workday. 780 F.3d 632, 637-38 (4th Cir. 2015). This missing analysis was "especially troubling" because the record contained conflicting evidence as to the claimant's ability to perform job-related functions. *Id.* at 637. More recently, in *Dowling v. Commissioner of Social Security Administration*, the Fourth Circuit Court of Appeals held that an ALJ's RFC determination was not supported by substantial evidence as the ALJ did not "indicate that [the] RFC assessment was rooted in a function-by-function analysis of how Appellant's impairments impacted her ability to work." 986 F.3d 377, 387 (4th Cir. 2021). While noting that a claimant's symptoms are certainly "relevant to the RFC evaluation," the Court made clear that

"an RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Id.*

Here, the ALJ concluded at step two of the sequential analysis that several of Plaintiff's impairments were severe. ECF No. 8-3 at 20. Thereafter, she concluded that Plaintiff had the RFC "to perform light work" with an array of limitations related to postural movements, balancing, pushing or pulling with upper extremities, and interactions with others. ECF No. 8-3 at 27. While the ALJ offered a detailed recitation of Plaintiff's medical treatment and history, she omitted a crucial step as she did not articulate "how these impairments translated into the RFC limitation." *Nancy G. v. Kijakazi*, No. GLS-20-3440, 2022 WL 363824, at *4 (D.Md. Feb 4, 2022). This missing analysis thwarts effective judicial review as it leaves the Court to guess how the ALJ determined that Plaintiff could perform certain tasks associated with light work on a regular and continuing basis.

Instead of performing a function-by-function analysis, the ALJ formulated Plaintiff's RFC by evaluating his symptoms. The ALJ's RFC analysis proceeds in the following order: (1) evaluates Plaintiff's subjective complaints; (2) summarizes Plaintiff's medical and treatment history; and (3) assesses Plaintiff's medical opinions. ECF No. 8-3 at 11-21. Based on this evidence, the ALJ concluded that Plaintiff "is capable of doing a range of work on a sustained and continuous basis despite the limitations resulting from his impairments." ECF No. 8-3 at 37. Although this symptom-based analysis allowed the ALJ to reach conclusions on some of the functions required under 20 C.F.R. § 404.1567(b), such as Plaintiff's inability to stoop, kneel, and crouch, she does not explain how he could perform the full array of functions necessary for light work. *See Henderson v. Kijakazi*, No. AAQ-20-3346, 2022 WL 1555408, at *2 (D.Md. May 17, 2022). For example, while the ALJ notes that Plaintiff's medical records indicate that he "exhibited

14

a reciprocal gait with no evidence of limp/antalgia and he used no assistive device," she does not explain how this translates to his ability to perform "a good deal of walking or standing" or "pushing or pulling of arm or leg controls" as is required for "light work." *See* 20 C.F.R. § 404.1567(b); ECF No 8-3 at 29-30.

As the Fourth Circuit explained in *Dowling*, treating the function-by-function analysis and the symptom evaluation as "one and the same" is error. 986 F.3d at 387. Accordingly, the Court finds that the ALJ's RFC determination is not supported by substantial evidence and that remand is necessary. Because I am remanding for the ALJ to conduct a function-by-function analysis, I decline to address Plaintiff's remaining arguments. *See James B. v. Kijakazi*, No. DLB-20-1243, 2021 WL 3912279, at *4 (D.Md. Sept. 1, 2021) (declining to address subsequent arguments after finding that remand was warranted).

## Conclusion

Based on the foregoing and pursuant to 42 U.S.C. § 405(g), Plaintiff's Motion for Summary Judgment (ECF No. 11) is GRANTED as to remand and DENIED as to all other relief. Defendant's Motion for Summary Judgment (ECF No. 13) is DENIED. The decision of the SSA is REMANDED for further proceedings consistent with this Opinion. A separate order will follow.

Date: _____7/April 2023_____

_____

A. David Copperthite
United States Magistrate Judge